## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

| | |
|---|---|
| **SWISS RE CORPORATE SOLUTIONS CAPACITY INSURANCE CORPORATION** as successor by merger with **NORTH AMERICAN CAPACITY INSURANCE COMPANY,** | : <br> : <br> : <br> : <br> : <br> : |
| **Plaintiff,** | : <br> : |
| v. | :    **Case No. 24-cv-1555** <br> : <br> : |
| **D&G PROTECTIVE SERVICES, INC. D/B/A FIRST CHOICE PROTECTION; SPARKLE SMITH-SCHICK, AS ADMINISTRATOR OF THE ESTATE OF DIAMOND SCHICK; SPARKLE SMITH-SCHICK, AS PROPOSED ADMINISTRATOR OF THE ESTATE OF RICHARD CASTANO; AND PATRICIA FALCONI, AS PROPOSED ADMINISTRATOR OF THE ESTATE OF NYASIA KNOX** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| **Defendants.** | : <br> : |

-------------------------------------------------------------------

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, SWISS RE CORPORATE SOLUTIONS CAPACITY INSURANCE CORPORATION as successor by merger with NORTH AMERICAN CAPACITY INSURANCE COMPANY ("Swiss Re"), by its counsel, Traub Lieberman Straus & Shrewsberry LLP, files this Complaint for Declaratory Judgment against Defendants, D&G PROTECTIVE SERVICES, INC. D/B/A FIRST CHOICE PROTECTION ("D&G"); SPARKLE SMITH-SCHICK, AS ADMINISTRATOR OF THE ESTATE OF DIAMOND SCHICK ("the Schick Estate"); SPARKLE SMITH-SCHICK, AS PROPOSED ADMINISTRATOR OF THE ESTATE OF RICHARD CASTANO ("the Castano Estate"); AND PATRICIA FALCONI, AS PROPOSED

ADMINISTRATOR OF THE ESTATE OF NYASIA KNOX ("the Knox Estate") and in support thereof, alleges as follows:

**Nature of Action**

1.      Swiss Re brings this insurance coverage action against D&G, the Schick Estate, the Castano Estate and the Knox Estate seeking a declaration that $100,000 is the maximum limit of insurance for both defense costs and indemnity available to D&G under a policy of insurance issued by Swiss Re to D&G in connection with three lawsuits filed against D&G by the Schick Estate, the Castano Estate and the Knox Estate alleging D&G is liable for the shooting deaths of three individuals that took place at 132 Overlook Drive, Farmingville, NY 11738 (the "Property").

**Parties**

2.       Plaintiff Swiss Re is a Missouri insurance company with its principal place of business located in Kansas City, Missouri.

3.      Defendant D&G is a New York corporation with its principal place of business located in Holbrook, New York.

4.      Sparkle Smith-Schick, as Proposed Administrator of the Estate of Diamond Schick, Deceased, was and is a resident of Cherry Hill, New Jersey and the Schick Estate's decedent, Diamond Schick ("Schick"), was a resident of Suffolk County New York

5.      Sparkle Smith-Schick, as Proposed Administrator of the Estate of Richard Castano, Deceased, was and is a resident of Cherry Hill, New Jersey and the Castano Estate's decedent, Richard Castano ("Castano"), was a resident of Suffolk County New York.

6.      Patricia Falconi, as Proposed Administrator of the Estate of Nyasia Knox, Deceased, was and is a resident of Snellville, Georgia and the Knox Estate's decedent, Nyasia Knox ("Knox"), was a resident of Suffolk County New York.

7.     No specific relief is requested against the Schick Estate, the Castano Estate or the Knox Estate, which have been joined herein because they are the plaintiffs in the Schick Case, the Castano Case and the Knox Case, respectively, and thus has been joined to be bound by the Court's judgment herein.  Should the Schick Estate, the Castano Estate and the Knox Estate stipulate to be bound by the declaration of rights and judgment herein, Swiss Re will dismiss these defendants from this matter.

**Jurisdiction and Venue**

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332 in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states.

9.     Jurisdiction is further appropriate because this is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

10.     An actual case and controversy of a justiciable nature exists between the parties involving the rights and obligations under a policy of insurance issued by Swiss Re to D&G.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district, and because D&G resides in this judicial district.

**Factual Background**

**The Lawsuits**

12.     On March 15, 2023, the Schick Estate and the Castano Estate filed a lawsuit against D&G and others in New York Supreme Court, Suffolk County, under Index No. 606591/2023 ("the Schick Case"). A true and correct copy of the operative complaint in the Schick Case is attached as **Exhibit A.**

13.     On July 17, 2023, the Castano Estate's claims in the Schick Case were discontinued without prejudice and on July 24, 2023, a separate lawsuit was filed by the Castano Estate against D&G and others New York Supreme Court, Suffolk County, under Index No. 617895/2023 ("the Castano Case"). A true and correct copy of the operative complaint in the Castano Case is attached as **Exhibit B.**

14.     On July 14, 2023, a lawsuit was filed by the Knox Estate against D&G and others in New York Supreme Court, Suffolk County, under Index No. 617439/2023 ("the Knox Case"). A true and correct copy of the operative complaint in the Knox Case is attached as **Exhibit C.** Where appropriate, the Schick Case, the Castano Case and the Knox Case will be referred to hereinafter as "the Lawsuits."

15.     The Lawsuits seek damages arising out of the shooting deaths of Schick, Castano and Knox, which occurred on July 23, 2021, on the Property.

16.     The Lawsuits allege D&G provided security services for the Property. Exs. A, B at ¶64; Ex. C at ¶156.

17.     The Lawsuits allege an unsafe and dangerous condition existed at the Property, which allowed a criminal assailant to enter, resulting in the deaths of Schick, Castano and Knox. Exs. A, B, ¶75; Ex. C. at ¶175-179.

18.      On information and belief, an unknown assailant entered an apartment on the Property shared by Castano and Schick and shot and killed Schick, Castano and Knox.

**The Policy**

19.     Swiss Re issued Commercial General Liability Policy no. 88-G0003337-02 to D&G for the policy period of July 8, 2021 to July 8, 2022 (the "Policy"). A true and correct copy of the Policy is attached as **Exhibit D**.

20.     The declarations page of the Policy states that the limits of insurance for general liability coverage are $1,000,000 for each occurrence, subject to a $2,000,000 aggregate. Ex. D.

21.     The declarations page of the Policy states that the limits of insurance for assault and battery liability coverage (defense inside) are $100,000 for commercial general liability – each occurrence, subject to a general liability aggregate of $200,000. Ex. D.

22.     The Policy provides, in part, that Swiss Re "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Ex. D.

23.     The Policy is amended by an endorsement that adds an assault and battery exclusion. The Exclusion – Assault & Battery Endorsement (form no. NAC-GB-R212 (02/14)) states in part:

> B.  The following exclusion is added as an item to the COMMERCIAL GENERAL LIABILITY COVERAGE PART, SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusion; COVERAGE C, MEDICAL PAYMENTS, 2. Exclusions, and to the LIQUOR LIABILITY COVERAGE PART, SECTION I – LIQUOR LIABILITY COVERAGE, 2. Exclusions:
>
> This insurance does not apply to claims or "suits" to recover damages for "bodily injury, "or "property damage," "personal and advertising injury," or medical payments arising from any of the following acts, allegations or causes of action:
>
> 1.  Assault;
> 2.  Battery;
> 3.  Harmful or offensive contact between or among two or more persons;
> 4.  Apprehension of harmful or offensive conduct between or among two or more persons;
> 5.  Threats by words or deeds;
> 6.  Unlawful restraint or false imprisonment;
> 7.  Negligent hiring or retention of any employee resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
> 8.  Failure to supervise or train any employee resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
> 9.  Negligent entrustment resulting in or pertaining to any act or allegation of any act identified in 1-6 above;

10. Negligent rescue in the aiding or failure to aid any person from any act or allegation of any act identified in 1-6 above, even if the rescue was an independent cause of harm or alleged to be;

11. Negligent maintenance of the premises resulting in or pertaining to any act or allegation of any act identified in 1-6 above;

12. Act actual or alleged failure to prevent, halt, or bar any act identified in 1-6 above; or

13. Indemnity for any act identified in 1-6 above.

The above acts, allegations or causes of action shall not be deemed an "occurrence" and we have no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to:

1. Whether damages sought are for "bodily injury." "property damage," "personal injury," or "advertising injury";

2. The intent or culpability of an insured, an employee, or "third party";

3. Whether the claim, demand, or suit alleges that an insured acted directly or indirectly to cause damage;

4. Whether the claim, demand, or suit alleges that liability is based upon the doctrine of respondeat superior;

5. Whether the claim, demand, or suit alleges that the insured trained, instructed, directed, influenced, or controlled its employees or "third parties in such a manner so as to cause damage or danger;

6. Whether the acts, allegations, or causes of action identified above occurred on or off the insured's jobsite or designated premises or premises owned, occupied, leased or rented by the insured;

7. Whether the claim, demand or suit alleges that the insured or his offices, employees or agents failed to prevent, bar or halt any conduct which is the basis of any act, allegation, or cause of action listed in Section B, items 1-13 above, or

8. Whether or not the claim, demand, or suit alleges indemnity is owed pursuant to a contract.

C. This exclusion also applies to any claims, demands, or suits by any other person, firm, estate, entity or organization asserting rights derived from, or contingent upon, any person asserting a claim excluded by Section B, items 1-13 above.

D. This exclusion applies to all damages to persons or property, regardless of the damages alleged, claimed, stipulated or awarded, including costs and fees.

Ex. D.

24.     The Exclusion – Assault & Battery Endorsement defines the term "third party" to

include "agents, independent contractors, sub-contractors, patrons, customers, lessors or lessees,

security personnel, or any other persons lawfully or unlawfully on the insured's designated premise." Ex. D.

25.    The unknown assailant that shot and killed Schick, Castano and Knox qualifies as a "third party" as that term is defined in the Policy.

26.    The Policy is amended by a Limited Assault & Battery Coverage Endorsement (form no. NAC-GB-R257 (02/14)). The Limited Assault & Battery Coverage Endorsement provides as follows:

**This endorsement modifies your policy under the following:**

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

In consideration of the additional premium paid, we agree to afford coverage as stated below:

A. The specific coverage excluded under NAC-GB-R212 (02/14) is reinstated subject to the following terms, conditions and limits of insurance stated below:

   1. We will pay no more than the applicable limit set forth below for sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" for coverage excluded under NAC-GB-R212 (02/14). The applicable limit in this form is the most we will pay regardless of:

      i.   The amount of the defense costs and fees
      ii.  The amount of any demand for indemnity;
      iii. The number of insureds;
      iv.  The number of claims or "suits" brought against you; or
      v.   The limits stated in the Declarations.

   2. Our duty to investigate, defend and indemnify you will end when we have used up the applicable limit of insurance set forth below by payment of costs, fees, expenses, or indemnity.
   3. When the applicable limit shown below exhausts from the payment of any claim, judgment, settlement, and/or defense costs and fees, you agree to take over the further handling of the claim or suit and to assume payment for all further costs and expenses incurred, including attorney fees, from the date of the payment that exhausts the policy limit until the claim, demand or suit is resolved.

4. We will have no duty to defend or indemnify you or otherwise resolve any claim(s) or "suit"(s) pending against you after exhaustion of the applicable limit. In this event, you agree to timely stipulate to any motion or application necessary for the withdrawal of insurer-appointed counsel.

B. Limits:

| | |
|---|---|
| Commercial General Liability | |
| Assault & Battery Each "Occurrence" | $100,000 |
| | |
| Liquor Liability | |
| Assault & Battery Each "Common Cause" | N/A |
| | |
| "Combined Assault & Battery Aggregate" | $200,000 |

The limits above are not in addition to the limits stated in the Declarations. However, all payments made pursuant to this endorsement will also reduce the applicable Limit of Insurance shown in the Declarations.

The "Combined Assault & Battery Aggregate Limit" is the most we will pay for coverage under this endorsement regardless of the number of claims or "suits" brought against you arising out of more than one "occurrence" and/or "common cause."

"Common Cause" means any claim, demand, or "suit" for injuries sustained by one or more persons as a result of the providing of alcoholic beverages.

All other terms, conditions, exclusions, limitations and definitions of this policy remain in full force and unchanged.

Ex. D.

**Swiss Re Agrees to Provide a Defense Subject to Reservation of Rights**

27. On or about April 4, 2023, Swiss Re received notice of the Lawsuits.

28. By letter dated December 5, 2023, Swiss Re acknowledged notice of the Lawsuits and agreed to provide a defense to D&G in the Lawsuits subject to a reservation of rights. A true and correct copy of the December 5, 2023, reservation of rights letter is attached as **Exhibit E**.

29. Swiss Re appointed defense counsel to represent D&G in the Lawsuits. Ex. E.

30.    The December 5, 2023, reservation of rights letter advised D&G that defense and indemnity coverage available to D&G under the Policy for the Lawsuits is limited to the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy. Ex. E.

31.    The December 5, 2023, reservation of rights letter advised D&G that Swiss Re may seek a judicial determination relating to the applicable limits of insurance available for the Lawsuit, and further requested that D&G sign a Stipulation of Coverage to confirm D&G's agreement that the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy is the maximum limit of insurance available to D&G with respect to the Lawsuits. Ex. E.

32.    By email dated December 26, 2023, counsel for Swiss Re emailed D&G and inquired as to whether D&G intended to execute the Stipulation of Coverage attached to the December 5, 2023, reservation of rights letter. A true and correct copy of the email sent to D&G is attached as **Exhibit F**.

33.    D&G has failed to respond to counsel for Swiss Re.

### COUNT I
### Declaratory Judgment – Defense and Indemnity Coverage Available to D&G for the Lawsuits is Limited to the $100,000 Sublimit of Insurance under the Limited Assault & Battery Coverage Endorsement

34.    Swiss Re repeats, re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

35.    The Policy's Exclusion – Assault & Battery Endorsement excludes coverage for claims or "suits" to recover damages for "bodily injury," or "property damage," "personal and advertising injury," or medical payments arising from any of the following acts, allegations, or causes of action: (1) assault; (2) battery; (3) harmful or offensive contact between or among two or more person; (4) apprehension of harmful or offensive contact between or among two or more persons; (5) threats by words or deeds; (6) unlawful restraint or false imprisonment; (7) negligent

hiring or retention of any employee resulting in or pertaining to any act or allegation of any act identified in 1-6 above; (8) failure to supervise or train any employee resulting in or pertaining to any act or allegation of any act identified in 1-6 above; (9) negligent entrustment resulting in or pertaining to any act or allegation of any act identified in 1-6 above; (10) negligent rescue in the aiding or failing to aid any person from any act or allegation of any act identified in 1-6 above, even if the rescue was an independent cause of harm or alleged to be; (11) negligent maintenance of the premises resulting in or pertaining to any act or allegation of any act identified in 1-6 above; (12) any actual or alleged failure to prevent, halt, or bar any act identified in 1-6 above, or (13) indemnity for any act identified in 1-6 above.

36.    The Policy's Exclusion – Assault & Battery Endorsement further states the acts, allegations or causes of action identified in Paragraph 31, above, shall not be an "occurrence" and Swiss Re will have no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to: (1) whether damages sought are for "bodily injury," "property damage," "personal injury," or advertising injury"; (2) the intent or culpability of an insured, an employee, or a "third party"; (3) whether the claim, demand, or suit alleges that an insured acted directly or indirectly to cause damage; (4) whether the claim, demand, or suit alleges that liability is based upon the doctrine of respondent superior; (5) whether the claim, demand, or suit alleges that the insured trained, instructed, directed, influenced, or controlled its employees or "third parties" in such a manner so as to cause damage or danger; (6) whether the acts, allegations, or causes of action identified above occurred on or off the insured's jobsite or designated premises or premises owned, occupied, leased or rented by the insured; (7) whether the claim, demand, or suit alleges that the insured or his officers, employees, or agents failed to prevent, bar or halt any

conduct which is the basis of any act, allegation, or cause of action listed in Paragraph 31, above; or (8) whether or not the claim, demand, or suit alleges indemnity is owed pursuant to a contract.

37.     The Policy's Exclusion – Assault & Battery Endorsement further states that it applies to any claims, demands or suits by any other person, firm, estate, entity or organization asserting rights derived from or contingent upon any person asserting a claim excluded by the Exclusion – Assault & Battery Endorsement, and applies to all damages to persons or property, regardless of the damages alleged, claimed, stipulated or awarded, including costs and fees.

38.     The Policy's Limited Assault & Battery Coverage Endorsement reinstates coverage for claims or "suits" to recover damages for "bodily injury" or "property damage" arising from the acts, allegations, or causes of action excluded by the Exclusion – Assault & Battery Endorsement, subject to certain terms, conditions and limits of insurance.

39.     One such limit contained in the Policy's Limited Assault & Battery Coverage Endorsement is an Assault & Battery Each "Occurrence" Limit of $100,000.

40.     The Policy's Limited Assault & Battery Coverage Endorsement provides that the Assault & Battery Each "Occurrence" Limit of $100,000 is the most Swiss Re will pay regardless of: (1) the amount of the defense costs and fees; (2) the amount of any demand for indemnity; (3) the number of insureds, (4) the number of claims or "suits" brought against you; or (5) the limits stated in the Declarations.

41.     The Lawsuits allege an unknown criminal assailant – a "third party" under the Exclusion – Assault & Battery Endorsement – caused the injuries to Schick, Castano and Knox, which, on information and belief, was an individual who entered an apartment on the Property shared by Castano and Schick and shot and killed Schick, Castano and Knox.

42.     The Lawsuits allege claims against D&G to recover for "bodily injury" arising from the acts, allegations, or causes of action identified in the Exclusion – Assault & Battery Endorsement.

43.     The Limited Assault & Battery Coverage Endorsement applies to the Lawsuits and the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy applies and is the maximum amount of defense and indemnity coverage available to D&G under the Policy for the Lawsuits.

44.     D&G has refused to acknowledge that the Policy's $100,000 Assault & Battery Each "Occurrence" Limit is the maximum amount of defense and indemnity coverage available to D&G with respect to the Lawsuits.

45.     An actual and justiciable controversy has arisen between Swiss Re on the one hand, and D&G on the other, concerning the obligations and scope of coverage available under the Policy with regard to the Lawsuits.

46.     A judicial declaration is necessary and appropriate at this time so that Swiss Re can ascertain the extent of its coverage obligation to D&G for defense and indemnity under the Policy with respect to the Lawsuits. A judicial declaration of the parties' rights and obligations under the Policy will obviate further disputes and terminate the uncertainty and controversy which has given rise to this proceeding.

WHEREFORE, Swiss Re respectfully requests that this Honorable Court declare and adjudicate the rights and liabilities of the parties under the Policy and (1) declare that the Limited Assault & Battery Coverage endorsement in the Policy applies to the Lawsuits; (2) declare that the $100,000 Assault & Battery Each "Occurrence" Limit set forth in the Policy's Limited Assault & Battery Coverage Endorsement is the maximum amount of defense and indemnity coverage

available to D&G for the Lawsuits; and (3) provide such other and further relief as this Court may deem just and equitable.

### COUNT II
**Declaratory Judgment – Swiss Re has the Right to Withdraw from D&G's Defense and D&G Must Stipulate to the Withdrawal Once the $100,000 Sublimit of Insurance under the Limited Assault & Battery Coverage Endorsement is Exhausted**

47.     Swiss Re repeats, re-alleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

48.     The Limited Assault & Battery Coverage Endorsement states that defense fees and costs are also paid from and reduce the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy.

49.     The Limited Assault & Battery Coverage Endorsement states that Swiss Re's duty to investigate, defend and indemnify D&G in the Lawsuits will end when Swiss Re has used up the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy by payment of costs, fees, expenses or indemnity.

50.     The Limited Assault & Battery Coverage Endorsement states that when the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy exhausts from the payment of any claim, judgment, settlement and/or defense costs and fees, D&G agrees to take over the further handling of the claim or suit and assume payment for all further costs and expenses incurred, including attorney's fees, from the date of the payment that exhausts the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy until the claim, demand or suit is resolved.

51.     The Limited Assault & Battery Coverage Endorsement states that Swiss Re will have no duty to defend or indemnify D&G or otherwise resolve any claim(s) or "suit"(s) pending against D&G, including the Lawsuits, after exhaustion of the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy and, in that event, D&G agrees to timely stipulate to any motion

or application necessary for the withdrawal of Swiss Re's appointed defense counsel for the Lawsuits.

52.     The Limited Assault & Battery Coverage Endorsement applies to the Lawsuits and thus, the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy is the maximum amount of defense and indemnity coverage available to D&G under the Policy for the Lawsuits.

53.     Defense fees and costs incurred by Swiss Re to defend D&G in the Lawsuits erodes the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy and once the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy is fully exhausted, Swiss Re has no further defense or indemnity obligation to D&G for the Lawsuits.

54.     Once the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy is fully exhausted relative to the Lawsuits, D&G must then assume the defense of the Lawsuits at D&G's cost and stipulate to a motion or application to withdraw Swiss Re's appointed defense counsel for D&G in the Lawsuits.

55.     An actual and justiciable controversy has arisen between Swiss Re on the one hand, and D&G on the other, concerning the obligations and scope of coverage available under the Policy with regard to the Lawsuits.

56.     A judicial declaration is necessary and appropriate at this time so that Swiss Re can ascertain the extent of its coverage obligation under the Policy with respect to the Lawsuits. A judicial declaration of the parties' rights and obligations under the Policy will obviate further disputes and terminate the uncertainty and controversy which has given rise to this proceeding.

WHEREFORE, Swiss Re respectfully requests that this Honorable Court declare and adjudicate the rights and liabilities of the parties under the Policy and (1) declare that the Limited Assault & Battery Coverage endorsement in the Policy applies to the Lawsuits; (2) declare that the

$100,000 Assault & Battery Each "Occurrence" Limit set forth in the Policy's Limited Assault & Battery Coverage Endorsement is the maximum limit of defense and indemnity coverage available to D&G for the Lawsuits; (3) declare that defense fees and costs incurred by Swiss Re to defend D&G in the Lawsuits erode the $100,000 Assault & Battery Each "Occurrence" Limit in the Policy, (4) declare that Swiss Re has the right to withdraw from D&G's defense once the $100,000 Assault & Battery Each "Occurrence" Limit in the Policy is exhausted; (5) declare that Swiss Re will have no further defense or indemnity obligation to D&G under the Policy for the Lawsuits once the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy is exhausted, (6) declare that once the $100,000 Assault & Battery Each "Occurrence" Limit of the Policy is fully exhausted that D&G must then assume the defense of the Lawsuits at D&G's cost and stipulate to a motion or application to withdraw Swiss Re's appointed defense counsel for D&G in the Lawsuits; and (7) provide such other and further relief as this Court may deem just and equitable.

Dated:  March 1, 2024

Respectfully submitted,

TRAUB LIEBERMAN
STRAUS & SHREWSBERRY LLP

_____

Copernicus T. Gaza, Esq.
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600
cgaza@tlsslaw.com
Attorneys for Plaintiff
*Swiss Re Corporate Solutions Capacity Insurance Corporation as successor by merger with North American Capacity Insurance Company*

Brandt W. Allen, Esq.
Traub Lieberman Straus & Shrewsberry LLP

71 S. Wacker Drive
Suite 2110
Chicago, Illinois 60606
(312) 332-3900
ballen@tlsslaw.com
Of Counsel
(Pro Hac Vice Pending)